In the Matter of Robert E. MANN, Debtor.

George W. LEDFORD, Chapter 13 Trustee in Bankruptcy, Plaintiff,

v.

Paul TERRILL, et al., Defendant.

Bankruptcy No. 3–83–00630.
Adv. No. 3–83–0770.

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 16, 1985.

Donald F. Harker, III, Dayton, Ohio, for debtor.

Ray Cox, Dayton, Ohio, for Miami Valley Prod. Cr. Assoc.

Gary L. Weaks, West Milton, Ohio, for defendants.

George W. Ledford, Englewood, Ohio, Trustee.

William H. MacBeth, Dayton, Ohio, for Fed. Land Bank.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is the complaint of the Chapter 13 Trustee seeking money damages for an alleged breach of contract arising out of a court ordered sale of real estate from the estate. This matter was heard by the Court on September 19, 1984, with ensuing briefs filed on October 29 and November 2. A partial Stipulation of Facts was attached to the pretrial statement dated August 8, 1984. The parties stipulated at bar before the trial that this Court resolve the matter including the application of state law. The issues involved are resolved as questions of fact, rather than of law, as to the *quantum* of damages as a core proceeding under 28 U.S.C. § 157(b)(2)(N) and (O).

## FACTS

On March 22, 1983, Robert E. Mann filed with this Court his petition seeking relief under Chapter 13. An agreed order abandoning property and modifying the automatic stay was filed wherein that portion of Mann's estate consisting of an interest in certain real property was abandoned and the parties were relieved from the automatic stay to effect a sale thereof. (Lienholders on this realty included the Federal Land Bank Association of Eaton, Ohio as first mortgagee, and Miami Valley Production Credit Association, as second mortgagee.) By agreement of the parties, and upon motion and order of this Court, the realty was later ordered sold by public sale on July 23, 1983. Plaintiff-Trustee acted as the mortgagees' agent in selling the realty and, pursuant to Court order, employed David Kessler as auctioneer and agent for the Trustee, to effect the sale.

The realty was sold at public auction on July 23, 1983. Defendant Paul Terrill was the highest bidder, offering $165,120.[1] Paul and the Trustee signed on that same day an Offer to Purchase reciting the bid amount, requiring $18,500 as earnest money, and setting the date for the closing at "not later than 60 days of the date hereof." This Offer to Purchase also stated, "The sale is subject to approval of the United States Bankruptcy Court, Dayton, Oh."

Later on that day, July 23, defendant Dixie Terrill, Paul's wife, not as a party to the Offer but solely in Paul's behalf tendered her check for $18,500 as the earnest money. Thus, the Trustee, by accepting a check from a non-party, should have been aware that Paul might have financial problems. Such notice was reinforced when on the next day, July 24, Dixie stopped payment on her check.

Notwithstanding the stopped payment, the Trustee requested and obtained confirmation of the sale from this Court by order dated September 8, 1983. The Trustee notified Paul of this confirmation order by letter dated September 13, 1983. This letter also set the date for closing at September 21, 1983, and requested payment of the $165,120 by cash, certified check or cashier's check. The Trustee further wrote, "If you fail to appear for the closing, I will consider it a breach of the contract, I will proceed to attempt a sale of real estate, and will seek legal damages against you if

---

1. On April 30, 1983, this realty had been appraised at $280,100.

I sell the real estate for less than $165,-120.00." This letter was served on Paul by special process server.

Apparently, Paul tried to negotiate for an extension of time because of difficulty in obtaining a loan. In light of the stopped payment on the earnest money check, the Trustee refused such extension.

At the trial, Paul testified that he never told anyone that he did not want to purchase the property. However, he failed to appear at the designated time for the closing and admittedly never fulfilled the requirements of the Offer to Purchase, which required closing within 60 days.

The Trustee proceeded to sell the realty to the next highest bidder. This sale was confirmed by the Court on December 8, 1983. On December 30, 1983, the second highest bidder settled for the purchase of the property for $160,992, which was then distributed on January 9, 1984. Paul alleges that he was never notified of this sale.

At trial, testimony was heard establishing that $4,138.66 was paid to the mortgagee Federal Land Bank between September 23, 1983, and January 9, 1984 and that additional real estate taxes of $1,855.99 accrued during that interim.

Also at trial, Kessler, the auctioneer who conducted the sale, testified that he is also an appraiser, that he believed Paul's bid represented the fair market value of the property and that he had attempted to contact Paul after the stopped payment but was unable to do so. This evidence is relevant only as it pertains to the failure of the buyers to comply with the court orders. The fair market value of the property prior to and at the time of the public auction is not otherwise relevant or a justiciable issue. The subsequent sale was duly confirmed by the Court.

## DECISION

In their brief, the defendants argue only as to the appropriate measure of damages,

thus tacitly admitting breach of the contract to purchase the realty and the confirmation order of this Court. In any event, Paul's breach of his Offer to Purchase is established by the evidence and admitted by his own testimony. The only remaining question for the Court to consider concerns damages.[2]

In instances of a breach of contract, the non-breaching party is to be made whole, i.e., to be put in that position as if there had been no breach. Defendants in their brief cite 54 O.Jur.2d, *Vendor and Purchaser* § 181 at pp. 731–32: "In Ohio, the ordinary measure of damages for breach of a contract to buy land is in [sic] the difference between the contract price of the land and the fair market value at the time of the breach of contract." This is correct for the *ordinary* measure. The very next sentence of the O.Jur section cited nevertheless excepts contracts made in connection with a judicial sale (as was the case here), as follows:

The vendor has no right to resell at the purchaser's risk, i.e., the measure of damages is not the difference between the contract price and the price obtained at a resale at least where there is no averment of an agreement by the vendor to be answerable for such difference and where the vendee's contract was not made in connection with a judicial sale or a sale in the nature thereof.

In this age of mysterious and bifurcated jurisdiction impeding the resolution of controversies arising in the bankruptcy court context, perspectives are critical and most often fatal to effective judicial administration. In the case *sub judice* emphasis by the litigants on the enforcement of a contract of purchase arising out of the judicial sale and the true valuation of the subject property before and after the defalcation somewhat distorts the basic nature of the legal process *instanter* as a core proceeding.

The focus and emphasis should be upon the fact that a judicial sale is the

---

**2.** Since the property was abandoned, the Court notes that general creditors are not affected by the disposition of this adversary.

nexus of the action. Inasmuch as both the sale and the resale were lawfully ordered and duly conducted and confirmed by court orders, the defaulting purchaser thereby incurred liability for any difference between the sum bid and which he agreed to purchase at the first sale and the amount the property brought at the resale, together with the costs and expenses of the sale. See discussion at 47 Am.Jur.2d *Judicial Sales* § 392. Hence, the enforcement of such liability is a function of the bankruptcy court and within its jurisdiction over sales of estate property; and, an independent suit is not necessary to resolve the issues upon default in compliance with court orders. No separate or distinct contract of sale is involved because the confirmation of the sale is equivalent to a valid contract of sale. The Trustee could have instituted an action in contempt (which puts the defalcation in the proper jurisdictional focus). See 32A O.Jur.2d *Judicial Sales* §§ 135–136.

To put the non-breaching party, the Trustee, in the same position he would have been in had there been no breach, the Court orders the breaching party, Paul Terrill, to pay to Plaintiff-Trustee $4,128 for the difference in the sale amounts as the amount of damages Plaintiff-Trustee indicated he would seek against Paul in his September 13 letter. The time lapse between the date of the sale to Paul and the date of consummation of the distribution from the second highest bidder should not be attributed entirely to Paul's defalcation and the ensuing expenses are not, as a matter of equity, assessed as damages against him herein. The sale should have been consummated more expeditiously.

Defendants argue that the second sale was on terms radically different than those of the first. The Court disagrees in that the Trustee sought and obtained permission from the Court to sell the subject realty at public auction to the highest bidder. That auction was held on July 23, 1983. When Paul Terrill removed his bid by breaching the Offer to Purchase, the bid for $160,992 then became the highest bid and the property was sold for that amount.

Peculiarly, Paul takes umbrage in that he was not notified of the sale for $160,992. The Court notes that in the Trustee's letter of September 13, Paul was advised that if he failed to appear, the Trustee would consider it a breach, attempt a sale of the real estate and would seek legal damages. Thus, Paul was notified of the consequences of not appearing. Yet, he did not appear. Moreover, he offered no evidence that he ever tried to contact the Trustee after the closing date. In fact, the auctioneer tried to reach him on several occasions without success. Thus, the Trustee's belief that Paul was no longer interested in the property can only be seen as reasonable.

The question of contempt of court for the consequences of the violation of the court's orders authorizing and confirming the public sale in question was not properly and timely raised by the pleadings and the issue of proper sanctions or punitive damages is not now justiciable, even though the integrity of the judicial process has been invoked.